STATE OF NORTH CAROLINA v. FRED HOWARD COFFEY, JR.

No. 253A91

(Filed 17 June 1994)

**1. Criminal Law § 1355 (NCI4th) — first-degree murder — mitigating circumstance — no significant history of prior criminal activity — activity subsequent to murder but before sentencing — not relevant**

The trial court erred when sentencing defendant for a first-degree murder committed in 1979 by admitting convictions in 1986 as relevant to the mitigating circumstance of no significant history of prior criminal activity. "History of prior criminal activity" in N.C.G.S. § 15A-2000(f)(1) pertains only to that criminal activity committed before the murder; if this language were to refer to defendant's criminal activity up to the time of sentencing, the word "prior" would have no meaning since at the time of sentencing the defendant's criminal activity prior to sentencing is identical to his "history of criminal activity." The only other meaningful point in time is the date of the crime, which is the point of reference for nearly every aggravating and mitigating circumstance, including that aggravating circumstance in N.C.G.S. § 15A-2000(e)(3) pertaining to whether defendant had been previously convicted of a felony involving the use or threat of violence to the person. There was prejudice in that the jury almost certainly considered defendant's entire criminal history in determining whether the mitigating circumstance existed. N.C.G.S. § 15A-1443(a).

**Am Jur 2d, Criminal Law §§ 598, 599.**

**Chronological or procedural sequence of former convictions as affecting enhancement of penalty under habitual offender statutes. 7 ALR5th 263.**

STATE v. COFFEY

[336 N.C. 412 (1994)]

2. **Evidence and Witnesses § 2171 (NCI4th)— first-degree murder — sentencing — defense psychiatric experts — cross-examination concerning indecent liberties convictions after murder — prejudicial**

The trial court erred in a sentencing hearing for the first-degree murder of a ten year old girl in 1979 by allowing the State to cross-examine a defense psychiatrist and psychologist concerning defendant's indecent liberties convictions in 1986 where the experts had used the convictions as part of the basis for a diagnosis of pedophilia and PTSD. Under N.C.G.S. § 8C-1, Rule 705, a party cross-examining an expert witness may generally inquire into the facts on which the expert's opinion is based, but the court must inquire under N.C.G.S. § 8C-1, Rule 403 whether the testimony should be excluded because its probative value is substantially outweighed by the danger of unfair prejudice. The prejudicial effect of nine counts of indecent liberties is manifest and it is evident that the convictions had little or no probative value for the purpose of supporting the experts' opinions. Moreover, defendant's pedophilia was irrelevant to the aggravating circumstances submitted and does not bear on any of the mitigating circumstances other than the ones dealing with emotional disturbance and impaired capacity, for which it only corroborates the experts' opinions.

**Am Jur 2d, Expert and Opinion Evidence §§ 32 et seq.**

**Admissibility of expert testimony as to criminal defendant's propensity toward sexual deviation. 42 ALR4th 937.**

Justice PARKER did not participate in the consideration or decision in this case.

Justice MITCHELL dissenting.

Justice MEYER joins in this dissenting opinion.

Appeal by defendant pursuant to N.C.G.S. § 7A-27(a) from judgment sentencing him to death imposed by Saunders, J., presiding at a resentencing hearing held at the 6 May 1991 Criminal Session of the Superior Court, Mecklenburg County. Heard in the Supreme Court on 3 November 1992.

*Lacy H. Thornburg, Attorney General, by Ellen B. Scouten, Assistant Attorney General, for the State.*

*James P. Cooney III, for defendant-appellant.*

EXUM, Chief Justice.

On 16 February 1987 defendant was indicted for the first degree murder of ten-year-old Amanda Ray, who died on 18 July 1979. Defendant was convicted at trial on theories of premeditation and deliberation and felony murder, based on the underlying felony of kidnapping. After a sentencing hearing following this trial, the jury recommended a death sentence, and judgment was so entered in October 1987. On appeal to this Court, we found no error in the guilt proceeding, but we ordered a new sentencing hearing because the verdict form employed by the jury did not include an issue as to whether the mitigating circumstances were insufficient to outweigh the aggravating circumstances, as required by N.C.G.S. § 15A-2000(c)(3). *State v. Coffey (Coffey I)*, 326 N.C. 268, 389 S.E.2d 48 (1990). On resentencing, a second jury also recommended the death sentence. The trial court again entered judgment sentencing defendant to death, and defendant appeals from that judgment.

I.

At the resentencing proceeding the State reiterated the facts surrounding the murder. The body of ten-year-old Amanda Ray was found in a wooded area near a lake in Mecklenburg County on 19 July 1979. An autopsy revealed that she had a black eye and bruises and that she died of asphyxiation. An investigation began immediately which produced several witnesses linking Amanda Ray with someone matching defendant's description on 18 July 1979 near a lake. The investigation continued for several years eventually revealing that dog hairs on defendant's couch and in defendant's van matched dog hairs found on Amanda Ray's clothing when her body was found. Defendant was questioned about the death of Amanda Ray in 1986 and was subsequently charged.[1]

The State also introduced testimony of Janet Ashe and Rev. James Hall indicating that defendant, in the months before the

---

1. For a more thorough account of the evidence, see *Coffey I*, 326 N.C. at 274-77, 389 S.E.2d at 51-53.

murder, masturbated in the presence of three-year-old Angel Ashe. This incident was admitted to establish the aggravating circumstance of murder committed during the course of a kidnapping.[2]

Defendant did not testify at the resentencing proceeding. Instead he presented two experts, psychologist Dr. Steven B. Bondy and psychiatrist Dr. John M. Billinsky. Dr. Bondy interviewed defendant twice and administered five tests to defendant. He diagnosed defendant as suffering from major depression, chronic post traumatic stress disorder (PTSD), and pedophilia. Defendant's PTSD was the result of repeated sexual abuse by his father. As a result of the pedophilia and PTSD, defendant was mentally and emotionally disturbed at the time of the murder and his capacity to conform his conduct to the requirements of the law was impaired. On cross-examination it was revealed, over objection, that Dr. Bondy's diagnoses were based in part on defendant's convictions for indecent liberties with children. Defendant had previously attempted to exclude the admission of his criminal record through a pre-trial motion, which was denied. The convictions which were introduced were: convictions in 1974 in Virginia Beach, Virginia, for two counts of indecent exposure and one count of indecent liberties involving three children; and convictions in 1986 in Caldwell County, North Carolina, for nine counts of indecent liberties with children involving three different children. The trial court instructed the jury to consider defendant's convictions solely for the purpose of supporting the witness' diagnoses.

Dr. Billinsky's opinion testimony was essentially the same as that of Dr. Bondy. He interviewed defendant twice and spoke with his family members. He diagnosed defendant as suffering from adjustment disorder with mixed emotional features, pedophilia, and chronic PTSD. Defendant's PTSD was the result of sexual abuse by his father. Based on defendant's pedophilia and PTSD, Dr. Billinsky concluded that defendant was under the influence of a mental or emotional disturbance at the time of the murder and that his capacity to appreciate the criminality of his conduct was

---

2. We held in *Coffey I* that evidence of the Angel Ashe incident was properly admitted to show that the murder was committed during the course of the felony of kidnapping. *Coffey I*, 326 N.C. at 280-81, 389 S.E.2d at 56. We note at this juncture that the State did not assert at trial nor has it asserted on appeal that defendant's convictions for indecent liberties with children, which are the primary subject of this appeal, were relevant to show that the crime was committed during the course of a kidnapping.

impaired. On cross-examination it was revealed that Dr. Billinsky's diagnosis of pedophilia was based in part on defendant's convictions in 1974 and 1986.

Also testifying for defendant were his mother and sister. Defendant was molested by his father from the age of six. Defendant was also forced to watch his father sexually abuse his siblings, including his sister. Resistance to the sexual abuse was met with physical abuse. Defendant's father threatened to kill defendant if he exposed the sexual abuse. After defendant's mother discovered the sexual abuse, she moved away with defendant. Defendant's father would then occasionally kidnap defendant and his sister, take them to a motel, and sexually abuse them. Defendant left home to join the Navy at the age of sixteen, eventually leading to service in Vietnam.

After the presentation of evidence the trial judge submitted two aggravating circumstances: (1) the death occurred while the defendant was engaged in a kidnapping, and (2) the death was especially heinous, atrocious, or cruel. Defendant requested 23 mitigating circumstances, the majority of which were submitted to the jury. The State also, over defendant's objection, requested that the statutory mitigating circumstance of "no significant history of prior criminal activity" be submitted. The court submitted this circumstance.

The jury found both aggravating circumstances. One or more jurors found that defendant was under the influence of a mental disturbance; that his capacity to appreciate the criminality of his conduct was impaired; that he was mentally, physically, and sexually abused by his father; that he suffered a deprived and unstable childhood; that he dutifully served his country during wartime in Vietnam; that he had previously attended classes at a college; that defendant was a hard worker in prison; and that he had continued his education by taking correspondence courses from prison. No juror found that defendant had no significant history of prior criminal activity. The jury sentenced defendant to death.

## II.

The first issue presented on appeal is whether the trial court erred in denying defendant's motion in limine, and overruling his objection at trial, which sought to exclude evidence relating to his convictions in 1974 and 1986. Evidence of criminal activity not

related to the crime charged must be relevant to some issue in the case to be admissible; such evidence is inadmissible when introduced to prove defendant's character "in order to show that he acted in conformity therewith." N.C. R. Evid. 404(b); *State v. Jeter*, 326 N.C. 457, 458, 389 S.E.2d 805, 806 (1990). The State argues that this evidence was relevant (A) to rebut the mitigating circumstance of no significant history of prior criminal activity, and (B) to explore the bases of the opinions of defendant's expert witnesses.

## A.

[1] The State argues that the trial court had a duty to submit the mitigating circumstance of "no significant history of prior criminal activity" notwithstanding defendant's objection since that circumstance was supported by the evidence. *See State v. Brown*, 315 N.C. 40, 337 S.E.2d 808 (1985), *cert. denied*, 476 U.S 1165, 90 L. Ed. 2d 733 (1986), *rev'd on other grounds* in *State v. Vandiver*, 321 N.C. 570, 364 S.E.2d 373 (1988). It then argues that any evidence bearing on that mitigator was relevant and admissible, including defendant's convictions in 1974 and 1986. We reject the State's argument as to the convictions in 1986.

The mitigator on which the State relies to demonstrate relevance pertains to the defendant's "history of prior criminal activity." After considering the language of this mitigator and its relation to the sentencing scheme, we hold that the history of prior criminal activity refers to defendant's criminal activity prior to the murder for which he is being sentenced, not prior to sentencing. The crimes for which defendant was convicted in 1986 therefore were not relevant to the mitigator on which the State relies.[3]

In determining the meaning of the mitigating circumstance found at N.C.G.S. § 15A-2000(f)(1) we are guided by the principle of statutory construction that a statute should not be interpreted in a manner which would render any of its words superfluous. *In re Watson*, 273 N.C. 629, 634, 161 S.E.2d 1, 6-7 (1968); *State v.*

---

3. We emphasize that the mitigating circumstance at issue here relates to "criminal activity," not criminal convictions. *See State v. Maynard*, 311 N.C. 1, 316 S.E.2d 197, *cert. denied*, 469 U.S. 963, 83 L. Ed. 2d 299 (1984). The record does not indicate when defendant committed the acts for which he was convicted in 1986. The clear inference from the record, however, is that the acts resulting in conviction in 1986 did not occur prior to the murder of Amanda Ray in 1979.

*Cloninger*, 83 N.C. App. 529, 531, 350 S.E.2d 895, 897 (1986); *see also* 73 Am. Jur. 2d *Statutes* § 250 (1974). We construe each word of a statute to have meaning, where reasonable and consistent with the entire statute, because "[i]t is always presumed that the legislature acted with care and deliberation . . . ." *State v. Benton*, 276 N.C. 641, 658, 174 S.E.2d 793, 804 (1970).

Applying this canon of construction to the statute at hand, it is clear that the mitigating circumstance at N.C.G.S. § 15A-2000(f)(1) pertains only to that criminal activity committed before the murder. The mitigating circumstance at issue here concerns defendant's "history of prior criminal activity." If this language were to refer to defendant's criminal activity up to the time of sentencing, the word "prior" would have no meaning since at the time of sentencing the defendant's criminal activity prior to sentencing is identical to his "history of criminal activity." In order to give the word "prior" meaning, therefore, we must construe N.C.G.S. § 15A-2000(f)(1) as referring to defendant's criminal activity committed prior to some event other than sentencing.

The only other meaningful point in time is the date of the crime, which is the point of reference for nearly every aggravating and mitigating circumstance.[4] We find therefore that "history of prior criminal activity" as used in N.C.G.S. § 15A-2000(f)(1) refers to criminal activity occurring before the murder.

This interpretation is confirmed by the aggravating circumstance found at N.C.G.S. § 15A-2000(e)(3), pertaining to whether "defendant had been previously convicted of a felony involving the use or threat of violence to the person." In *State v. Goodman*, 298 N.C. 1, 257 S.E.2d 569 (1979), we held that this aggravator does not include crimes committed after the murder. Recognizing the relationship between this circumstance and the mitigator pertaining

4. All eleven aggravating circumstances relate to the defendant at the time of the murder; for example, whether the murder was "committed for pecuniary gain" and whether the murder was "especially heinous, atrocious, or cruel." N.C.G.S. § 15A-2000(e)(6), (9). Six of the seven specific statutory mitigating circumstances other than the one at issue here likewise focus on the defendant at the time of the murder, such as whether the defendant was under the influence of an emotional disturbance or duress. *See Id.* § 15A-2000(f)(2), (5). Of the nineteen aggravating and mitigating circumstances, only one clearly includes defendant's conduct after the murder; N.C.G.S. § 15A-2000(f)(8) provides as a mitigating circumstance that the "defendant aided in the apprehension of another capital felon or testified truthfully on behalf of the prosecution in another prosecution of a felony."

STATE v. COFFEY

[336 N.C. 412 (1994)]

defendant's history of prior criminal activity, it has been stated: "Just as prior conviction of a felony involving violence is designated an aggravating circumstance, the absence of any significant history of prior criminal activity calls for mitigation of sentence." II Model Penal Code § 210.6 commentary at 137 (1980). To the extent that the mitigating circumstance of "no significant history of prior criminal activity" is related to the aggravating circumstance that "defendant had been previously convicted of a felony involving the use or threat of violence," it seems clear that the legislature intended the same time frame to be used in both circumstances. Thus, the aggravating circumstance in N.C.G.S. § 15A-2000(e)(3) is some indication that the mitigating circumstance of no significant history of prior criminal activity does not include crimes committed after the murder.

Our review of cases elsewhere reveals that the only jurisdiction to have addressed this precise issue decided it in accord with our analysis.[5] In *Scull v. State*, 553 So.2d 1137, 1143 (Fla. 1988), the court rejected the State's argument that "the term 'prior' [means] prior to the sentencing, not the commission of the murder." In doing so it overturned the earlier decision in *Ruffin v. State*, 397 So.2d 277 (per curiam), *cert. denied*, 454 U.S. 882, 70 L. Ed. 2d 194 (1981). The court in *Scull* effectively adopted the reasoning of the dissenting opinion in *Ruffin*, where three justices stated that to consider crimes committed after the murder for the mitigator

---

5. We note that numerous cases from other jurisdictions address aggravating circumstances such as that "defendant was previously convicted in this state of a class 1 or 2 felony involving violence." *See People v. White*, 870 P.2d 424 (Colo. 1994). In that context, several courts have held that "previously convicted" means convicted prior to sentencing, not prior to the criminal act. *See id.* at 442-45 (citing cases from other jurisdictions); Thomas M. Fleming, Annotation, 65 A.L.R.4th 838, 918-24 (1988) (same); *accord State v. McCullers*, 77 N.C. App. 433, 436, 335 S.E.2d 348, 350 (1985) (aggravating factor of "prior convictions" includes convictions up to time of sentencing); *but see Gargliano v. State*, 639 A.2d 675, 683 (Md. App. 1994) (interpreting "repeat offender" statute as enhancing sentence only when conviction for one crime precedes conduct of second crime). We find such cases inapposite as N.C.G.S. § 15A-2000(f)(1) refers to "criminal activity," not "criminal convictions." When interpreting "previous criminal convictions," the word "previous" can mean previous to sentencing and still have meaning; in that context, "previous" clarifies that the sentencer is not to consider the conviction for which the defendant is then being sentenced. When interpreting "prior criminal activity," however, the word "prior" has no real meaning if it means prior to sentencing. We also note that these cases are not in conflict with our holding in *Goodman* since the aggravator applied in that case refers to whether defendant "*had been* previously convicted," not whether defendant "was previously convicted."

of no significant history of prior criminal activity "goes against any common-sense interpretation of the phrase 'history of prior criminal activity' and amounts to tortured logic . . . ." *Id.* at 284 (Sundberg, C.J., dissenting, joined by England and McDonald, JJ.). We agree with the reasoning of this dissent, which was later adopted in *Scull*, that "prior" must mean prior to the crime for which the defendant is charged.

Thus, the State's contention that defendant's convictions in 1986 were admissible to rebut the mitigator of no significant history of prior criminal activity is without merit.

B.

[2] The State next argues that defendant's convictions, including those in 1986, were admissible since they formed the basis of the opinions of defendant's expert witnesses. The State relies on Rule 705, which provides:

> The expert may testify in terms of opinion or inference and give his reasons therefor without prior disclosure of the underlying facts or data, unless an adverse party requests otherwise, in which event the expert will be required to disclose such underlying facts or data on direct examination or voir dire before stating the opinion. The expert may in any event be required to disclose the underlying facts or data on cross-examination. There shall be no requirement that expert testimony be in response to a hypothetical question.

N.C. R. Evid. 705.

It is clear that under Rule 705 a party cross-examining an expert witness generally may inquire into the facts on which the expert's opinion is based. Rule 705, however, "does not end the inquiry. In determining whether to allow an expert to testify to the facts underlying an opinion, the court must inquire whether, under [Rule] 403, the testimony should be excluded because its probative value is substantially outweighed by the danger of unfair prejudice." *United States v. Gillis*, 773 F.2d 549, 554 (4th Cir. 1985); *accord* N.C. R. Evid. 403. Ordinarily the question of whether evidence should be excluded lies within the discretion of the trial judge; that discretion, however, "is not unlimited." *State v. Scott*, 331 N.C. 39, 42, 413 S.E.2d 787, 789 (1992).

We find the probative value of defendant's convictions in 1986 to be substantially outweighed by the danger of unfair prejudice when those convictions are introduced by the State solely to

STATE v. COFFEY

[336 N.C. 412 (1994)]

demonstrate the bases of the experts' opinions. The convictions in 1986 were therefore not admissible under the provisions of Rule 705 permitting inquiry into the basis of an expert's opinion.

The prejudicial effect of nine counts of indecent liberties with children is manifest. The danger is that the jury, in deciding whether defendant should be sentenced to death, would make its decision considering not only the murder of Amanda Ray and the aggravating and mitigating circumstances, but also the incidents of sexual abuse committed upon children several years later. The "overwhelming potential for prejudice" that is generated through the introduction of evidence relating to prior criminal activity was recognized in *State v. Scott*, 331 N.C. at 44, 413 S.E.2d at 789-90.

Further, the State has not pointed to any issue for which the convictions, when used to support defendant's experts, were probative. The State seems to view Rule 705 as giving it carte blanche to introduce the basis of an adverse expert opinion regardless of its prejudicial effect and probative value. As stated above, however, this is not the case. Here it is evident that the convictions had little or no probative value when introduced by the State for the asserted purpose of supporting the experts' opinions.

The essence of the testimony of Dr. Bondy and Dr. Billinsky was that as a result of defendant's PTSD and pedophilia, he was under a mental disturbance at the time of the murder and his capacity to appreciate the criminality of his conduct was impaired. The experts testified that the convictions were important to their diagnosis of pedophilia. The State, however, did not challenge the diagnosis of pedophilia on cross-examination, in closing arguments, or otherwise. The cross-examination of Dr. Bondy and Dr. Billinsky consisted almost exclusively of probing defendant's treatability and propensity for violence. In closing the State conceded defendant's pedophilia and challenged only whether his pedophilia contributed to his actions. In fact, the State repeatedly referred to defendant as a "child molester."

We also emphasize that defendant's pedophilia was irrelevant to both of the aggravating circumstances submitted. The aggravating circumstances submitted to the jury were that the murder occurred during the course of a kidnapping and that the murder was especially heinous, atrocious, or cruel. The State argued neither at trial nor on appeal that defendant's pedophilia was relevant to these aggravators. Further, we are unable to see how those convictions bear on the aggravators submitted. *See* N.C. R. Evid. 404(a)

("Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion . . . ."). Thus, the convictions are not probative of the existence of either aggravating circumstances the State sought to establish. Likewise, we cannot see how defendant's pedophilia bears on any of the mitigating circumstances submitted other than the ones dealing with an emotional disturbance and impaired capacity, for which they only corroborate the experts' opinions.

In sum, the evidence of defendant's convictions in 1986 was extremely prejudicial. Further, those convictions when introduced under Rule 705 by the State are of little, if any, probative value. Under these circumstances, the probative value of defendant's convictions in 1986 is substantially outweighed by the potential for prejudice; and the convictions should have been excluded under Rule 403 upon defendant's motion in limine and his objection at trial.

We also find that this error requires reversal as it cannot be said that there is no reasonable possibility that the error affected the outcome. N.C.G.S. § 15A-1443(a) (1988). As stated earlier, the evidence relating to convictions in 1986 for nine counts of indecent liberties and indecent exposure was highly prejudicial and "its effect . . . can only have been to arouse the passion and prejudice of the jury." *See State v. Kimbrell*, 320 N.C. 762, 768, 360 S.E.2d 691, 694 (1987) (improper admission of evidence relating to defendant's devil-worshipping requires new trial). The State even emphasized defendant's pedophilia, and history of sexual abuse of children, in closing arguments when it repeatedly referred to the defendant as a "child molester."

Further, the jury almost certainly considered those convictions improperly when it determined that defendant did have a significant history of prior criminal activity. In its closing argument the State argued:

The prior criminal activity, as we heard, includes a conviction for indecent liberties and two counts of indecent exposure with children in 1974, in Virginia Beach, Virginia. In 1979 he masturbated in front of Angel Ashe. *And in 1986, he was convicted of nine counts of taking indecent liberties with children.* (Emphasis added).

STATE v̇. COFFEY

[336 N.C. 412 (1994)]

The court, over defendant's objection, instructed the jury on the mitigating circumstance of no significant history of prior criminal history as follows:

You may find this mitigating circumstance if you find that an episode of masturbation and convictions for indecent liberties and indecent exposure do not constitute a significant history of prior criminal activity.

The trial court in no way restricted the jury's consideration of defendant's history of criminal activity to his criminal activity before the killing of Amanda Ray. Based on the presentation of evidence, the State's arguments, and the jury instruction, the jury almost certainly considered, improperly, defendant's entire criminal history in determining whether the statutory mitigating circumstance of no significant history of prior criminal activity existed. This error entitles defendant to a new sentencing proceeding. N.C.G.S. § 15A-1443(a).

NEW SENTENCING PROCEEDING.

Justice Parker did not participate in the consideration or decision in this case.

Justice MITCHELL dissenting.

The defendant's experts testified that his status as a pedophiliac was an important part of what they felt was his impaired capacity to appreciate the criminality of his acts at the time he killed the ten-year-old child victim in the present case. On cross-examination by the State, each of those experts specifically testified that the defendant's many prior convictions for taking indecent liberties with children was an important factor in the diagnosis of pedophilia. Ordinarily such evidence is admissible under N.C.G.S. § 8C-1, Rule 705, which provides that an expert may testify to the facts on which the expert's opinion is based. The majority concludes, however, that the probative value of this evidence was substantially outweighed by danger of unfair prejudice and that the trial court abused its discretion by failing to exclude it under N.C.G.S. § 8C-1, Rule 403. I do not agree.

The majority finds that the testimony during the cross-examination of the defendant's experts that the defendant's convictions were an important basis for their diagnosis of pedophilia

had no tendency to weaken that diagnosis in the eyes of the jury. Although that is one possible view of the evidence in question, I believe a jury reasonably could have found the evidence to weaken the reliability of the diagnosis of the experts. Therefore, I believe that the majority has inadvertently invaded the province of the jury by applying the findings the majority would make from the evidence while failing to recognize that the evidence would support contrary findings.

It appears to me that the State was attempting to convince the jury that the two expert witnesses in question would testify that anyone who had been convicted of numerous offenses of taking indecent liberties with children is a pedophiliac and, inevitably, unable to appreciate fully the criminality of his conduct in murdering a child. If the jury so found, the jury reasonably could have given the experts' testimony less credibility than it would have given that testimony absent the State's cross-examination concerning the weight the experts gave the defendant's prior crimes.

The majority further says that because the prosecutor referred to the defendant during closing arguments as a "child molester," the State conceded the defendant's pedophilia and challenged only whether his pedophilia contributed to his actions. Regardless of whether the prosecutor argued (1) that the defendant was not a pedophiliac or (2) that pedophilia did not impair his capacity to appreciate the criminality of his conduct in killing the child victim in the present case, I believe the jury reasonably could have found the evidence of the defendant's prior convictions for taking indecent liberties with children relevant and probative as to either of those points.

The fact that the prosecutor referred to the defendant as a "child molester" did not, as the majority contends, amount to conceding that the defendant suffered from the medical condition of pedophilia. Quite the contrary, the State was attempting to convince the jury that the defendant was a criminal—a "child molester"—and not simply a mentally ill pedophiliac whose capacity to appreciate his criminal conduct was impaired. For these reasons, I believe that the majority errs in holding that the trial court abused its discretion by failing to exclude the evidence of the defendant's prior convictions for taking indecent liberties with children. The evidence was admissible under Rule 705 and its pro-

bative value was not outweighed by any danger of unfair prejudice so as to require its exclusion under Rule 403.

For the foregoing reasons, I respectfully dissent from the decision of the majority.

Justice MEYER joins in this dissenting opinion.