STATE OF NORTH CAROLINA v. TONY MITCHELL SIDDEN

No. 148A95

(Filed 3 October 1997)

**1. Jury § 153 (NCI4th)— capital trial—voir dire—consideration of possible punishments—question not improper**

It was not error for the prosecutor to ask prospective jurors in a capital murder trial whether their feelings would prevent or substantially impair their ability to perform their duties to consider fairly the possible punishments even if the question called on the jurors to apply a legal standard subjectively.

**Am Jur 2d, Jury §§ 206, 207.**

**2. Jury § 146 (NCI4th)— capital sentencing—instruction—setting aside personal feelings**

It was not error for the trial court in a capital murder trial to tell prospective jurors that they must make a recommendation "setting aside personal feelings."

**Am Jur 2d, Trial §§ 1653-1655.**

**3. Jury § 150 (NCI4th)— capital trial—excusal for cause— rehabilitation not permitted**

It was within the trial court's discretion to refuse to permit defendant to rehabilitate jurors excused for cause where the answers of all excused jurors revealed that their feelings would prevent or substantially impair the performance of their duties as jurors.

**Am Jur 2d, Jury §§ 159, 160.**

**4. Evidence and Witnesses § 364 (NCI4th Rev.)— murder trial—evidence of another murder—chain of circum- stances—admissibility**

In a prosecution for the murder of two boys, evidence of the murder of their father was so intertwined with evidence of the murder of the boys that it was admissible to show the circum- stances of the charged crimes where the evidence showed that defendant and his stepson kidnapped the two boys, left them in the trunk of an automobile while they murdered the boys' father, and then murdered the boys.

**Am Jur 2d, Evidence §§ 301, 404 et seq.**

**5. Evidence and Witnesses § 3174 (NCI4th)— corrobora- tion—consistency of statements—opinion testimony**

The admission of an officer's opinion that the testimony of an eyewitness was basically the same as statements he had made to officers was not plain error where the officer testified to the con- tents of the prior statements and the trial court instructed the jury on the limited use of this testimony.

**Am Jur 2d, Witnesses §§ 1001 et seq.**

**6. Evidence and Witnesses § 3158 (NCI4th)— number of times informant used—testimony not plain error**

The admission of an FBI agent's testimony that the FBI had used information provided to it by a State's witness on twenty dif- ferent occasions did not permit the agent to promote the credi- bility of the witness by testimony as to specific instances of con- duct in violation of N.C.G.S. § 8C-1, Rule 608(b) and was not plain error.

**Am Jur 2d, Witnesses §§ 1027, 1028.**

STATE v. SIDDEN

[347 N.C. 218 (1997)]

**7. Criminal Law § 878 (NCI4th Rev.)— question by jury—propriety of instruction**

When the jury asked during deliberations why a person whose name had been mentioned in the evidence did not testify, the trial court properly instructed the jury to decide the case based on the evidence presented; the court was not required to reinstruct the jury to consider arguments of counsel, and the instruction did not tell the jury that the evidence was sufficient to convict defendant.

**Am Jur 2d, Trial §§ 1213, 1218, 1315 et seq.**

**8. Criminal Law § 430 (NCI4th Rev.)— prosecutor's argument—failure to call alibi witness**

The prosecutor's jury argument that defendant failed to call his ex-wife to support his alibi that he was with her at the time of the crimes even though she had been present in the courtroom for the entire trial was a proper comment on defendant's failure to produce exculpatory evidence.

**Am Jur 2d, Trial §§ 592, 597, 598.**

**9. Criminal Law § 439 (NCI4th Rev.)— prosecutor's argument—characterization of defendant as devil—no gross impropriety**

The prosecutor's jury argument that when you "try the devil, you've got to go to hell to get your witnesses" and that the defendant "qualifies in that respect" was not so egregious that the court should have stricken it *ex mero motu*.

**Am Jur 2d, Trial § 291.**

**10. Criminal Law § 474 (NCI4th Rev.)— prosecutor's argument—use of photographs**

The prosecutor could properly use photographs of murder victims during closing argument where the photographs were in evidence.

**Am Jur 2d, Evidence §§ 960-970, 1070, 1451; Trial §§ 345, 349.**

**Admissibility in evidence of colored photographs. 53 ALR2d 1102.**

11. **Criminal Law § 470 (NCI4th Rev.)— prosecutor's argument—skeletal remains—inference from evidence**

The prosecutor could properly argue that defendant had turned the victims into "skeletal remains" where the evidence tended to show that defendant buried the victims in an old well after shooting them and covered their bodies with lime and Drano; their bodies were not discovered for nine years; and only the victims' skeletons were found.

**Am Jur 2d, Trial §§ 632-639.**

12. **Criminal Law § 458 (NCI4th Rev.)— mitigating circumstance—generosity to community—drug and alcohol money—prosecutor's argument**

Where the evidence in a murder trial showed that defendant had been involved in the illegal sale of drugs and alcohol for many years, the prosecutor could rebut defendant's argument that the catchall mitigator was supported by his generosity to his community by arguing the inference that the money defendant gave his neighbors came from the drug and liquor sales and by referring to defendant as the "Godfather of Traphill."

**Am Jur 2d, Trial § 1291.**

13. **Criminal Law § 460 (NCI4th Rev.)— prosecutor's argument—death penalty—biblical references—no gross impropriety**

The prosecutor's biblical references in urging the jury to return a recommendation of death under the law were not grossly improper and did not require the trial court to intervene *ex mero motu* where the prosecutor did not contend that the state law or its officers were divinely inspired.

**Am Jur 2d, Criminal Law §§ 533, 534.**

14. **Criminal Law § 1392 (NCI4th Rev.)— codefendant received life sentence—not mitigating circumstance**

The trial court did not err in refusing to submit to the jury in a capital sentencing proceeding the mitigating circumstance that defendant's codefendant received a life sentence since (1) a codefendant's sentence for the same murder is irrelevant in a sentencing proceeding, and (2) the codefendant was tried noncapitally because he was a juvenile when the murders were committed.

**Am Jur 2d, Criminal Law §§ 527, 598, 599.**

**15. Criminal Law § 1382 (NCI4th Rev.)— murder of victims' father—prior criminal activity—no significant criminal history mitigating circumstance**

In a capital sentencing proceeding for the murders of two boys, defendant's murder of the boys' father just prior to the murders of the boys constitutes "prior criminal activity" for purposes of the "no significant history of prior criminal activity" mitigating circumstance even though it was a part of the course of conduct in which the two boys were murdered. N.C.G.S. § 15A-2000(f)(1).

**Am Jur 2d, Criminal Law §§ 527, 598, 599.**

**16. Criminal Law § 1382 (NCI4th Rev.)— mitigating circumstance—no significant criminal history—submission not required**

The trial court did not err by failing to submit the "no significant history of prior criminal activity" mitigating circumstance to the jury in a capital sentencing proceeding for the murders of two young boys where the evidence showed that defendant had been dealing in the illegal sale of alcohol and drugs all of his adult life and that he murdered the boys' father prior to killing the boys.

**Am Jur 2d, Criminal Law §§ 527, 598, 599.**

**17. Criminal Law § 1392 (NCI4th Rev.)— nonstatutory mitigating circumstance—refusal to submit—harmless error**

Assuming that evidence offered by defendant would have supported the submission of the requested nonstatutory mitigating circumstance that defendant is likely to adjust well in the future in prison, the trial court's failure to submit this mitigating circumstance was harmless error where other mitigating circumstances were submitted which allowed the jury to consider defendant's evidence, and the jury failed to find any of those circumstances. Since the jury did not find the circumstances submitted, it would not have found a circumstance supported by the same evidence.

**Am Jur 2d, Criminal Law §§ 527, 598, 599.**

**18. Criminal Law § 1375 (NCI4th Rev.)— nonstatutory mitigating circumstance—mitigating value—instruction**

The trial court did not err in instructing the jury that one or more jurors would have to believe a submitted nonstatutory mitigating circumstance had mitigating value in order for the jury to

find it and in failing to instruct that the jury must give such circumstance some weight in reaching its decision.

**Am Jur 2d, Criminal Law §§ 527, 598, 599.**

**19. Criminal Law § 1358 (NCI4th Rev.)— death penalty recommendation—binding on trial court**

The trial court did not have the authority to set aside the jury's verdict recommending the death penalty.

**Am Jur 2d, Criminal Law §§ 609, 628.**

**20. Criminal Law § 1402 (NCI4th Rev.)— murders of two boys—death sentences proportionate**

Sentences of death imposed upon defendant for the first-degree murders of two young boys were not excessive or disproportionate where defendant kidnapped the boys and locked them in the trunk of his car while he robbed and killed their father, and defendant then kept the boys locked in an attic for eight hours until he shot each of them in the head with a pistol.

**Am Jur 2d, Criminal Law §§ 627, 628.**

**Sufficiency of evidence, for death penalty purposes, to establish statutory aggravating circumstance that murder was committed in course of committing, attempting, or fleeing from other offense, and the like—post-*Gregg* cases. 67 ALR4th 887.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from judgments imposing sentences of death entered by Ross, J., at the 20 February 1995 Special Criminal Session of Superior Court, Alexander County, upon jury verdicts of guilty of first-degree murder. The defendant's motion to bypass the Court of Appeals as to two additional judgments for kidnapping was allowed 23 July 1996. Heard in the Supreme Court 13 February 1997.

The defendant was tried for the murder and kidnapping of Garry Sidden, Jr. and Galvin Sidden. The testimony of the defendant's cellmate, Jesse Lord, tended to show that on or about 23 or 24 July 1982, the defendant and his fifteen-year-old stepson, Ray Blankenship, decided to rob Garry Sidden, Sr. Garry Sidden, Sr. lived with his two sons, Garry Sidden, Jr., sixteen years old, and Galvin Sidden, ten years old, in a mobile home. Garry Sidden, Sr. also ran a club and country store on his property.

On the evening of the robbery, the two boys came out of the club between 10:30 and 11:30 p.m. and began to walk toward the mobile home. The defendant and his stepson subdued the two boys, bound their arms and legs with tape, and locked them in the trunk of the defendant's car. The defendant and his stepson then went to the mobile home, where they murdered Garry Sidden, Sr. and stole cocaine, money, and marijuana.

The defendant told Lord that he and his stepson next drove the two boys to an old farmhouse, where they kept them locked in the attic for approximately eight hours while they dug a hole. The defendant then took the boys one at a time to the hole and shot each of them in the head with a .38-caliber pistol. The defendant then covered the bodies of the two boys.

The bodies of Garry, Jr. and Galvin Sidden were not found until nine years later when the defendant's stepson led law enforcement officers to the location. The bodies were found in an old well. They had apparently been buried with lime and Drano.

*Michael F. Easley, Attorney General, by Thomas S. Hicks, Special Deputy Attorney General, for the State.*

*Jeffery M. Hedrick for defendant-appellant.*

WEBB, Justice.

[1] The defendant first argues error in the process of selecting the jury. He says seven jurors were excused without an adequate inquiry as to their ability to impose the death penalty. He does not argue that the form of the questions and answers did not satisfy the requirements of *Wainwright v. Witt*, 469 U.S. 412, 83 L. Ed. 2d 841 (1985). He argues that the jurors were asked whether their feelings would prevent or substantially impair their ability to perform their duties to consider fairly the possible punishments. He says this called on prospective jurors to apply a legal standard subjectively, which they could not do. He also says the questions presupposed that the prospective jurors understood the complex legal standards outlining the parameters of their duties, which is not so. If the questions called on the prospective jurors to apply a legal standard subjectively, this was not error. The questions were straightforward and easily understood. The jurors should have had no trouble answering them. If the jurors did not understand the legal standards outlining the parameters of their duties, this does not mean they could not properly answer the questions.

**[2]** The defendant argues that it was wrong for the court to tell the jurors that they must make a recommendation "setting aside personal feelings." This was not error. In determining what sentence to impose, a juror should follow the law and not his personal feelings. Nor can we hold, as urged by the defendant, that the court implied that reservations about capital punishment would disqualify prospective jurors from serving when it said it was the duty of the jury "to fairly consider both possible punishments." This was an admonition to the jury to be fair to both sides.

**[3]** The defendant also argues under this assignment of error that he should have been allowed to rehabilitate those jurors excused for cause. The defendant at trial asked to rehabilitate only one of the jurors who was excused for cause. The answers of all the excused jurors revealed that their feelings would prevent or substantially impair the performance of their duties as jurors. It was within the discretion of the trial judge whether to allow the rehabilitation of the jurors. *State v. Taylor*, 332 N.C. 372, 390, 420 S.E.2d 414, 425 (1992).

This assignment of error is overruled.

**[4]** The defendant next assigns error to the admission of evidence in regard to the murder of Garry Sidden, Sr. The State introduced evidence that defendant and his stepson killed Garry Sidden, Sr. This evidence included photographs of the body and crime scene, diagrams, and the testimony of Sabon Johnson, an eyewitness. Evidence of the commission of a crime other than the one for which the defendant is being tried is admissible if such evidence is so intertwined with the evidence of the principal crime that the circumstances of the charged crime cannot be established without such evidence. *State v. Agee*, 326 N.C. 542, 391 S.E.2d 171 (1990).

In this case, the evidence showed the defendant and his stepson kidnapped the two boys and put them in the trunk of an automobile. They left the two boys in the trunk while they murdered the boys' father. They then murdered the two boys. Evidence of the murder of the father was so intertwined with evidence of the murder of the boys that in order to show the circumstances of the crime, it was admissible. It was not barred by N.C.G.S. § 8C-1, Rule 404(b). *Id.* at 549, 391 S.E.2d at 175. It was not an abuse of discretion pursuant to N.C.G.S. § 8C-1, Rule 403 for the court to admit this evidence.

This assignment of error is overruled.

STATE v. SIDDEN

[347 N.C. 218 (1997)]

[5] The defendant next contends that the trial court committed plain error in allowing the testimony of two State's witnesses. The first witness was SBI Agent Steve Cabe. He testified to contents of prior statements made by Sabon Johnson to him. He then testified that Johnson's testimony at trial had been basically "the same statements as he made initially both to law enforcement and in the first trial [the defendant's trial for the murder of Garry Sidden, Sr.]."

The defendant acknowledges that a witness' prior consistent statements are admissible for the purpose of corroboration. However, he contends that the trial court erred in allowing Agent Cabe to state his opinion that Johnson's testimony was the same as he had made to the officers. The defendant relies on *State v. Norman*, 76 N.C. App. 623, 334 S.E.2d 247, *disc. rev. denied*, 315 N.C. 188, 337 S.E.2d 863 (1985), in support of his argument.

In *Norman*, the Court of Appeals held that testimony of an officer that a witness' testimony was substantially the same as his prior statements was error. *Id.* at 627, 334 S.E.2d at 250. However, in that case, the Court of Appeals noted that the officer had not testified as to the contents of the previous statement. *Id.* The present case is distinguishable since the officer in this case did testify as to the contents of the previous statement. The jury was able to draw its own conclusion as to whether the statements were the same. Furthermore, the trial court instructed the jury as to the limited use of this testimony. *State v. Jones*, 317 N.C. 487, 496-97, 346 S.E.2d 657, 662 (1986).

[6] The second witness about which defendant complains was FBI Agent James Davis. Agent Davis testified without objection that the FBI had used information provided to it by Jesse Lord on twenty different occasions. Agent Davis testified that, based on his dealings with Lord, he had formed an opinion as to Lord's truthfulness. The court then sustained an objection to this testimony, and the witness did not testify as to his opinion. No curative instruction was given.

The defendant says that Agent Davis was allowed to promote the credibility of State's witness Lord by testifying as to specific instances of conduct, in violation of N.C.G.S. § 8C-1, Rule 608(b). We do not believe that was the purpose of the testimony. Apparently, the witness was laying the foundation for giving his opinion as to Lord's truthfulness. He was stopped from doing so by the sustaining of the objection.

STATE v. SIDDEN

[347 N.C. 218 (1997)]

In his colloquy, Agent Davis testified without objection as to the times the FBI had relied on Lord. Davis was not allowed to express his opinion as to Lord's truthfulness. This does not rise to the level of plain error.

This assignment of error is overruled.

[7] In his next assignment of error, the defendant contends the court erred in its response to a question from the jury. During the guilt-phase deliberations, the jury submitted a written question to the court, asking, "Where is Jerry Prevette, and why was he not called to testify?" The court responded:

In regards to that, Ladies and Gentlemen, I would instruct you that you are to decide this matter based on upon [sic] the evidence that has been presented and you are—it is your duty to recall all of the evidence and to base your decision on the evidence and on the law.

The defendant says this instruction was erroneous because it was incomplete, it failed to remind the jury to consider the arguments of counsel, and it did not address the thrust of the jury's inquiry, which was the obligation of the jury should it have a reasonable doubt. The defendant argues that this instruction misinformed the jury by telling it that the evidence was sufficient to convict the defendant. The defendant says there is a distinct possibility that this instruction stripped him of his presumption of innocence. We disagree.

The jury asked why a person whose name had been mentioned in the evidence did not testify. The court properly instructed the jury to decide the case based on the evidence presented. The court was not required to reinstruct the jury to consider arguments of counsel after it had properly done so in its charge. *State v. Hockett*, 309 N.C. 794, 309 S.E.2d 249 (1983). We do not believe the instruction told the jury the evidence was sufficient to convict the defendant; although, if the evidence was believed by the jury, it was so sufficient. Nor do we believe it could have caused the jury not to hold the State to proof beyond a reasonable doubt.

This assignment of error is overruled.

The defendant next assigns error to the following instructions given by the trial court during the sentencing phase of the trial:

The existence of any mitigating circumstance must be established by a preponderance of the evidence. That is, the evidence

taken as a whole must satisfy you not beyond a reasonable doubt but simply satisfy you that any mitigating circumstance exist[s].

The defendant argues that the court should have defined preponderance of the evidence as "more probable than not." He also contends that the court erred in using the term "satisfies you," as it is vague and highly subjective.

We have previously considered and rejected this contention. *State v. Payne*, 337 N.C. 505, 448 S.E.2d 93 (1994), *cert. denied*, 514 U.S. 1038, 131 L. Ed. 2d 292 (1995).

This assignment of error is overruled.

In his next assignment of error, the defendant contends that the prosecutor made several improper arguments during both phases of the trial.

[8] The first argument complained of by the defendant is the prosecutor's argument that the defendant failed to call his ex-wife, Brenda Sidden, as a witness to support his alibi, even though she had been present in court for the entire trial. The defendant had contended that he had been with her on the evening of the murders. The prosecutor stated:

And remember I asked Mr. Ockert, of all the people in these photographs, how many of them are here in this courtroom? And he said, "well, there's me, there's Tony [the defendant] and there's Brenda Sidden back there." Sitting where she is now with the defense witnesses and family and friends back there. Sitting all week that way. Why didn't they call her up here to testify about these pictures? She's sitting right back there with them. . . . If he wants to call her— he didn't call her. He left her sitting back there among the other witnesses.

Jean Ockert testified for the defendant that at the time of the murder, the defendant had been at Ockert's house with Brenda Sidden. The identity of Brenda Sidden and the fact that she was in the courtroom had been brought into evidence during the State's cross-examination of Ockert. The prosecutor asked Ockert to point out Brenda Sidden, both in a photograph and in the courtroom.

The prosecutor was properly commenting on the defendant's failure to produce exculpatory evidence. *State v. Brewer*, 325 N.C. 550, 386 S.E.2d 569 (1989), *cert. denied*, 495 U.S. 951, 109 L. Ed. 2d 541

(1990). It is permissible for such comments to note a defendant's failure to produce an alibi witness. *State v. Hunt*, 339 N.C. 622, 641, 457 S.E.2d 276 (1994).

**[9]** Next, the defendant argues that the trial court should have intervened *ex mero motu* during the following argument by the prosecutor:

> We have been criticized for using Jesse Lord, and you know prison is a place—and we have never been there, but I have heard it said that when you go . . . to try the devil, you've got to go to hell to get your witnesses, and Marion, Illinois qualifies in that respect. The Defendant over here qualifies in that respect.

The defendant, relying on *State v. Willis*, 332 N.C. 151, 420 S.E.2d 158 (1992), says it was error for the prosecuting attorney to characterize him as the devil. In *Willis*, the prosecutor argued, "when you try the devil, you have to go to hell to find your witnesses." *Id.* at 171, 420 S.E.2d at 167. We said this did not characterize the defendant as the devil but described the type witness available in that case. *Id.* In this case, the prosecuting attorney in effect said the defendant qualified as the devil.

In the context in which it was said, we do not believe the jury could have thought the prosecutor believed the defendant was the devil. He meant that the defendant was a bad man. The argument was not so egregious that the court should have stricken it *ex mero motu*.

**[10]** The defendant next contends that the trial court erred in allowing the prosecutor to use photographs of the victims during closing argument. The photographs were in evidence and, therefore, could be properly used in argument by either party.

**[11]** The defendant also says that the prosecutor should not have been permitted to argue that the defendant had turned the victims into "skeletal remains." The prosecutor said, "I ask you to go by the evidence, not by the falsehoods supplied by the Defendant and find this man guilty of turning these boys from that to this, from that to this," while gesturing toward a photograph of the skeletal remains of the victims.

The prosecutor may draw inferences from the evidence. In the present case, there was ample evidence to support the prosecutor's inference that the defendant had turned the victims into skeletons. The defendant had buried the two boys in an old well and covered their bodies with lime and several bottles of Drano. The bodies were

not located for nine years, and only the victims' skeletons were found.

[12] The defendant also complains that the prosecutor improperly called the defendant "the Godfather of Traphill." The prosecutor argued:

> All that money he was paying out up there. You know where that money came from based on what the evidence is coming out to you. He was the Godfather of Traphill. Giving out money to people. Oh, you need $65 to get your motorcycle back? Well, here, take [$]80. You need $300 for the tombstone of your son. Here's the $300.

The defendant had previously argued that the catchall mitigator was supported by his generosity to his community. He had presented evidence that he had given money to people in his neighborhood.

The prosecutor was properly rebutting the defendant's argument in support of the "catch-all" mitigator by noting that the evidence at trial also showed that the defendant had been involved in the illegal sale of drugs and alcohol for many years. The prosecutor properly drew the inference that the money the defendant gave his neighbors came from illegal drug and liquor sales.

[13] The defendant next says that the prosecutor's biblical references were grossly improper and that the trial court should have intervened *ex mero motu*. During the guilt phase, the prosecutor argued:

> You know, the Bible, Luke 17, Versus [sic] 2, "It were better for him that a millstone were hanged about his neck and he cast into the sea than that he should offend one of these little ones." And that's what we have in this case, Ladies and Gentlemen. It is [an] offense committed against little ones.

The prosecutor also referred to this passage again in the sentencing phase arguments. He stated:

> You know, that's how important this case is. If you can come back and say—look Pat Pruitt right in the eye and say, "Well, I know he murdered your two sons. I know he took them out there after he slaughtered their father when they could either see or hear it. Took them out to Cecile Holder's property and laid them face down there on the ground and shot them in the back of the head. And even though that happened, we think these 17 or 18 mitigat-

ing circumstances is [sic] appropriate and his family life, whatever, makes up for it; and he ought not to get the death sentence." Well, that is not justice, and when you come back in on the basis of these kind of mitigating—alleged mitigating circumstances and look her in the eye and inform her her sons[] weren't worth anymore than that—it would be better for him that a millstone were hanged about his neck and he cast into the sea than he should offend one of these little ones.

Ladies and Gentlemen, I ask you under the law, what's right and what's just, that you take a millstone and you hang it around his neck and you cast it right into the sea for having offended these little ones.

The prosecutor's argument was not grossly improper. He did not contend that the state law or its officers were divinely inspired. *State v. Walls*, 342 N.C. 1, 463 S.E.2d 738 (1995), *cert. denied,* — U.S. —, 134 L. Ed. 2d 794 (1996). The prosecutor urged the jury to return a recommendation of death under the law.

This assignment of error is overruled.

[14] In his next assignment of error, the defendant argues that the trial court erred in refusing to submit to the jury the mitigating circumstances that the defendant's codefendant received a life sentence. He also argues that the trial court should have, alternatively, set aside the jury's recommendation of death for this same reason.

Aside from the fact that we have repeatedly held that a codefendant's sentence for the same murder is irrelevant in the sentencing proceedings, *State v. Bishop*, 343 N.C. 518, 548-49, 472 S.E.2d 842, 858 (1996), *cert. denied,* — U.S. —, 136 L. Ed. 2d 723 (1997); *State v. Irwin*, 304 N.C. 93, 104, 282 S.E.2d 439, 447 (1981), the codefendant in this case was tried noncapitally pursuant to N.C.G.S. § 14-17 because he was a juvenile when the crimes were committed, *State v. Blankenship*, 337 N.C. 543, 546, 447 S.E.2d 727, 729 (1994). We decline to reconsider this issue.

This assignment of error is overruled.

[15] The defendant next assigns error to the court's failure to submit the (f)(1) mitigator, "[t]he defendant has no significant history of prior criminal activity." N.C.G.S. § 15A-2000(f)(1) (1988) (amended 1994). He argues first that the murder of Garry Sidden, Sr. cannot be considered prior criminal conduct for purposes of this mitigating cir-

cumstance because it was a part of the course of conduct in which the two boys were murdered. The defendant relies on *State v. Coffey*, 336 N.C. 412, 444 S.E.2d 431 (1994), for this argument. We do not believe *Coffey* is helpful to the defendant. It holds that to be considered in regard to this mitigator, the criminal conduct must have occurred before the date of the crime for which the defendant is being tried, rather than the date of the trial. *Id.* at 418, 444 S.E.2d at 434-35. The murder of Garry Sidden, Sr. occurred before the murder of the two boys, which makes it fit within the words of the mitigator as "prior criminal activity." It has to be considered when determining whether to submit this mitigating circumstance.

[16] The evidence showed the defendant had been dealing in the illegal sale of alcohol and drugs all his adult life. This evidence of constant criminal activity culminating in the murder of Garry Sidden, Sr. was such that the jury could not reasonably find that the defendant had no significant history of prior criminal activity. It was not error not to submit this mitigator.

This assignment of error is overruled.

[17] The defendant next assigns error to the failure to submit the nonstatutory mitigating circumstance, "[t]he Defendant is likely to adjust well in the future to prison." In support of this circumstance, the defendant adduced testimony from John F. Warren, a forensic psychologist who testified that the defendant had been treated for major depression while in prison and had responded so well that he was able to stop taking medication. Dr. Warren also testified that while the defendant was incarcerated, he had voluntarily participated in group therapy and benefitted from those involvements. Dr. Warren testified further that some of the defendant's most stable and consistent social and educational experiences occurred during his incarceration. He testified finally that the defendant's work adjustment while incarcerated was exemplary and that there was no indication that the defendant is violence-prone. A deputy sheriff testified that he had handled the defendant on several occasions while the defendant was incarcerated and had never had any disciplinary problems.

In *Skipper v. South Carolina*, 476 U.S. 1, 90 L. Ed. 2d 1 (1986), the United States Supreme Court held that evidence of a defendant's ability to adjust to prison life is relevant to a jury's sentencing recommendation and that a defendant is entitled to present evidence concerning his conduct in custody and his ability to adjust to prison. Assuming this mitigating circumstance should have been submitted,

we hold that the failure to submit it was harmless beyond a reasonable doubt. N.C.G.S. § 15A-1443(b) (1996).

In *State v. Robinson*, 336 N.C. 78, 443 S.E.2d 306 (1994), *cert. denied*, 513 U.S. 1089, 130 L. Ed. 2d 650 (1995), the superior court refused to submit the nonstatutory circumstance that "[i]n a structured prison environment, [the defendant] is able to conform his behavior to the rules and regulations and performs tasks he is required to perform." *Id.* at 109, 443 S.E.2d at 321. An expert witness testified that the defendant functioned well in a prison environment, followed the rules, got along well with other inmates, and was able to live in that environment without disturbing or offending other inmates by his behavior.

We held it was harmless error not to submit the requested mitigating circumstance because the jury was allowed to consider fully this evidence in regard to mitigating circumstances that were submitted. The circumstances that were submitted included (1) that the defendant had a good prison record while at Central Prison, (2) that the defendant had exhibited good behavior while incarcerated at the Guilford County jail in High Point and had volunteered to serve meals to his fellow inmates and to perform other custodial duties such as mop the floor, and (3) any other circumstance or circumstances arising from the evidence which the jury deemed to have mitigating value. The jury did not find any of these mitigating circumstances. We held that if the jury refused to find these circumstances, it would not have found the defendant's requested circumstance, which was supported by the same evidence.

Among the mitigating circumstances that were submitted in this case were the following: (1) the defendant has an exemplary work record in prison, (2) the defendant has not given local authorities problems in his care and housing and has behaved appropriately while in custody, and (3) any other circumstance or circumstances arising out of the evidence that one or more of the jurors deem to have mitigating value. The jury did not find any of these mitigating circumstances. Following the rationale of *Robinson*, we hold that mitigating circumstances were submitted to the jury which allowed it to consider the defendant's evidence. If the jury did not find the circumstances submitted, we can conclude it would not have found one that was not submitted. Any error in not submitting the circumstance was harmless.

This assignment of error is overruled.

**[18]** The defendant next says the court committed error in its charge on nonstatutory mitigating circumstances. The court charged the jury that one or more jurors would have to believe a submitted nonstatutory mitigating circumstance had mitigating value in order for the jury to find it. The defendant argues that the jury should have been told that it must give such circumstances some weight in reaching its decision.

The defendant concedes that we have rejected his argument in *State v. Huff*, 325 N.C. 1, 381 S.E.2d 635 (1989), *sentence vacated on other grounds*, 497 U.S. 1021, 111 L. Ed. 2d 777 (1990), and *State v. Fullwood*, 323 N.C. 371, 373 S.E.2d 518 (1988), *sentence vacated on other grounds*, 494 U.S. 1022, 108 L. Ed. 2d 602 (1990). He says these cases have been overruled by *McKoy v. North Carolina*, 494 U.S. 433, 108 L. Ed. 2d 369 (1990), and *Penry v. Lynaugh*, 492 U.S. 302, 106 L. Ed. 2d 256 (1989). We disagree. *McKoy* dealt with our requirement that the jury must be unanimous before it can find a mitigating circumstance. The United States Supreme Court held this prevented the jury from considering mitigating evidence. We do not have that problem in this case. *Penry* dealt with Texas' method of imposing the death sentence. The United States Supreme Court held that the issues submitted to the jury did not allow it to give adequate consideration to mitigating evidence. In this case, the jury was able to fully consider the defendant's mitigating evidence. The jury rejected this evidence, which was its prerogative.

This assignment of error is overruled.

**[19]** In his final assignment of error, the defendant contends the court should have set aside the jury's verdict recommending the death penalty. He bases this argument on the jury's failure to find any of the submitted mitigating circumstances, including the nonstatutory circumstances for which the court gave peremptory instructions. The defendant says it is obvious that the jury ignored the court's instructions.

The superior court did not have the authority to set aside the verdict. *State v. Holden*, 321 N.C. 125, 164, 362 S.E.2d 513, 537 (1987), *cert. denied*, 486 U.S. 1061, 100 L. Ed. 2d 935 (1988). Furthermore, nonstatutory mitigating circumstances do not have mitigating value as a matter of law. It is for the jury to make this decision. *State v. Miller*, 339 N.C. 663, 690, 455 S.E.2d 137, 152, *cert. denied*, —— U.S. ——, 133 L. Ed. 2d 169 (1995). The jury was not required to find these mitigating circumstances,

This assignment of error is overruled.

In regard to our statutory duties required by N.C.G.S. § 15A-2000(d)(2), we find that the record supports the jury's findings of the aggravating circumstances upon which the sentence of death was based. We also find that the sentence of death was not imposed under the influence of passion, prejudice, or any other arbitrary factor.

[20] In determining whether the death sentence was excessive or disproportionate, we note first that in *State v. Maynard*, 311 N.C. 1, 35, 316 S.E.2d 197, 215, *cert. denied*, 469 U.S. 963, 83 L. Ed. 2d 299 (1984), we held that the death penalty is proportionate when the only purpose for a murder is to eliminate a witness. Even if *Maynard* is not controlling, we have no difficulty finding the sentence proportionate because we have never found a death sentence disproportionate in a double-murder case. *State v. Conner*, 345 N.C. 319, 338, 480 S.E.2d 626, 635 (1997). This case involves a triple murder. It is hard to find a case to compare with this one. The facts in this case demonstrate a wanton cruelty which is beyond comparison. The defendant kidnapped two young boys and kept them locked first in the trunk of his automobile while he murdered their father and then in an attic before killing them. We can only imagine the terror the two boys felt as they awaited their fate. The torture endured by these two children removes any doubt that the sentence of death in this case is proportionate.

In the defendant's trial, we find

NO ERROR.