STATE OF NORTH CAROLINA v. RODNEY KEMP JETER, A/K/A AHIAH AHI ISREAL

No. 199PA89

(Filed 5 April 1990)

**Criminal Law § 34.5 (NCI3d) — rape and burglary — prior offense — admissible to show identity**

The trial court did not err in a prosecution for first degree rape and first degree burglary by admitting evidence of a similar rape and burglary that had occurred five months earlier at a location about five miles away. The circumstantial evidence that defendant was the perpetrator of the offense committed five months earlier, including both similar fingerprint evidence and the similar pattern of its perpetration, demonstrates a potent, logical pertinence to the question of the assailant's identity in the offense on trial. In particular, fingerprint and palm print evidence found at the scene of the crimes, coupled with strong circumstantial evidence that the nights of the offenses were the only occasions upon which defendant's prints could have been made on the respective premises, was evidence of considerable probative force, far outweighing any possibility of unfair prejudice. N.C.G.S. § 8C-1, Rule 404(b).

**Am Jur 2d, Evidence § 322.**

ON discretionary review pursuant to N.C.G.S. § 7A-31 of a decision of the Court of Appeals, 93 N.C. App. 588, 378 S.E.2d 818 (1989), which set aside judgments sentencing defendant to life imprisonment upon his conviction of rape in the first degree and to forty years imprisonment upon his conviction of burglary in the first degree, entered by *Fountain, J.*, at the 25 January 1988 Mixed Session of Superior Court, WAKE County, and awarded a new trial. Heard in the Supreme Court 14 March 1990.

*Lacy H. Thornburg, Attorney General, by Donald W. Laton, Assistant Attorney General, for the State-appellant.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Gordon Widenhouse, Assistant Appellate Defender, for defendant-appellee.*

WHICHARD, Justice.

Defendant was convicted of rape and burglary, both in the first degree. The single question is whether the trial court erred in admitting evidence of a similar rape and burglary that had been perpetrated five months earlier at a location approximately five miles away. The Court of Appeals concluded that it had, and accordingly awarded a new trial. *State v. Jeter*, 93 N.C. App. 588, 378 S.E.2d 818 (1989). We allowed discretionary review on 6 September 1989. We now conclude that admission of such evidence was proper under the circumstances of this case, and we thus reverse the Court of Appeals.

Under N.C.R. Evid. 404(b), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." However, such evidence may be admissible to prove, for example, the identity of the perpetrator. N.C.G.S. § 8C-1, Rule 404(b) (1988). The probative value of such evidence must substantially outweigh any danger of unfair prejudice. N.C.G.S. § 8C-1, Rule 403 (1988). "Where . . . such evidence reasonably tends to prove a material fact in issue in the crime charged, it will not be rejected merely because it incidentally proves the defendant guilty of another crime," but only if the sole logical relevancy of that evidence is to suggest defendant's predisposition to commit the type of offense with which he is presently charged. *State v. Johnson*, 317 N.C. 417, 425, 347 S.E.2d 7, 12 (1986). In a criminal case, the identity of the perpetrator of the crime charged is always a material fact. *Id.* Under the common law prior to adoption of the current Rules of Evidence, and under Rule 404(b), "[w]here the accused is not definitely identified as the perpetrator of the crime charged and the circumstances tend to show that the crime charged and another offense were committed by the same person, evidence that the accused committed the other offense is admissible to identify him as the perpetrator of the crime charged." *State v. McClain*, 240 N.C. 171, 175, 81 S.E.2d 364, 367 (1954).

This Court has stated that "[t]he dangerous tendency of this class of evidence to mislead and raise a legally spurious presumption of guilt requires that its admissibility should be subjected to strict scrutiny by the courts." *State v. Johnson*, 317 N.C. at 430, 347 S.E.2d at 15. *See also State v. McClain*, 240 N.C. at 177, 81 S.E.2d at 368. This determination has led to the concern that

identification of the perpetrator in the other offense be "positive" before that evidence may be ruled admissible. *See State v. Breeden,* 306 N.C. 533, 537, 293 S.E.2d 788, 791 (1982); *State v. Freeman,* 303 N.C. 299, 302, 278 S.E.2d 207, 208 (1981). In *Johnson* this Court read *Breeden* as stating a requirement that such positive identification be no less than "direct evidence link[ing] . . . defendant [to] the other crimes." *Johnson,* 317 N.C. at 429, 347 S.E.2d at 14.

*Breeden,* however, preceded the codification of N.C.R. Evid. 404(b). That rule includes no requisite that the evidence tending to prove defendant's identity as the perpetrator of another crime be direct evidence, exclusively. Neither the rule nor its application indicates that examples of other provisions — such as admissibility of evidence of other offenses to prove motive, opportunity, intent, preparation, or plan — rest solely upon direct evidence. *E.g., State v. Price,* 326 N.C. 56, 388 S.E.2d 84 (1990) (circumstantial evidence of defendant's perpetration of "virtually identical" strangulation, proximate in time, showing preparation, plan, knowledge or identity). Under the statutory scheme of Rules 403 and 404, the concern that anything other than direct evidence of a defendant's identity in a similar offense might "mislead [the jury] and raise a legally spurious presumption of guilt" is met instead by the balancing test required by Rule 403: the critical inquiry regarding evidence of other offenses introduced for purposes of showing defendant's identity as the perpetrator of the offense for which he is being tried is not whether it is direct or circumstantial, but whether its tendency to prove identity in the charged offense substantially outweighs any tendency unfairly to prejudice the defendant.

Moreover, not only has this Court employed a "markedly liberal" interpretation of Rule 404(b) when the State was seeking to introduce evidence of prior, similar sex offenses by a defendant, *State v. Cotton,* 318 N.C. 663, 666, 351 S.E.2d 277, 279 (1987), but we have stressed repeatedly that the rule is, at bottom, one of relevancy. Accordingly, a careful reading of its provisions "clearly shows [that] evidence of other offenses is admissible so long as it is relevant to any fact or issue other than the character of the accused." *State v. Weaver,* 318 N.C. 400, 403, 348 S.E.2d 791, 793 (1986) (citing 1 Brandis on North Carolina Evidence § 91 (2d rev. ed. 1982)). A more recent and more accurate perspective on the appropriate use of Rule 404(b) is as a "general rule of *inclusion* of relevant evidence of other crimes, wrongs or acts by a defendant." *State v. Coffey,* 326 N.C. 268, 278-79, 389 S.E.2d 48, 54

(1990). This rule of inclusion is "subject to but *one exception* requiring its exclusion if its *only* probative value is to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged." *Id.* at 279, 389 S.E.2d at 55.

In this case the State introduced evidence of "circumstances tend[ing] to show that the crime charged and another offense were committed by the same person"—*State v. McClain,* 240 N.C. at 175, 81 S.E.2d at 367—under the Rule 404(b) provision allowing evidence tending to prove the identity of the perpetrator of the offenses charged. Although this was not "direct" evidence, it demonstrated offenses so similar in the means of their perpetration and included circumstantial identification evidence so strongly implicating defendant as the perpetrator of each, that any concern about a "legally spurious presumption of guilt" is obliterated in light of its probative value.

Shortly after the victim here had gone to sleep at 11:30 p.m. on 20 May 1987, she was awakened by a man lying on top of her, holding a knife to her forehead. The man did not disrobe her, except to raise her nightgown and take off her underpants. He warned her repeatedly to "shut up" and "be quiet," and not to move or he would hurt her. Pushing her face into a pillow, he forced her to have intercourse from the rear. The assault took five to ten minutes, after which the assailant asked the victim if she had either money or a gun, and, holding the pillow between the victim's head and himself, he forced the victim to walk with him to the door. The victim later discovered that she had been threatened with a new knife from her own kitchen drawer and that a screen had been removed from a living room window.

Investigators lifted overlapping fingerprints from the screen and a palm print matching that of defendant from a recently painted windowsill. No evidence from defendant nor any evidence offered by the State suggested any explanation for the presence of defendant's palm print other than his entry into the victim's house on the night of the offense.

The victim described the voice of her assailant as that of a black male between twenty and thirty years of age. She described the perpetrator as being of medium build and approximately five feet, eight inches tall. Defendant, whom police officers had seen peeping into apartment bedroom windows in the hours after mid-

night on 11 June 1987, was apprehended in a neighborhood adjoining the victim's yard.

At trial the State offered the following circumstantial evidence of a prior, similar offense under Rule 404(b) as proof of defendant's identity as the assailant in the 20 May 1987 burglary and rape. Five months earlier, five or six miles away, another rape victim was awakened after midnight, this time by the sensation that someone was standing over her. The assailant first attempted fellatio, but this was prevented by the victim's orthodontic apparatus. He proceeded to force the victim onto her stomach, to remove her underpants but not to disrobe her further, and to force her to have vaginal intercourse. As in the subsequent rape, the assailant held one of the victim's own knives against her face and pushed her face away from him into the pillow. He repeatedly charged the victim to "shut up" and threatened to hurt her if she did not do as he wished. The assault took five to ten minutes, then the assailant left. Investigators later discovered that the assailant had pried open a window in order to enter the victim's ground-floor apartment.

Shortly after the assailant's departure in the prior episode, the victim found that the contents of her pocketbook had been spilled. Some cash was missing, and police investigators lifted a print matching that of defendant's little finger from the address book that had been in the pocketbook. The victim testified that she could not conceive of any time the address book might have been in defendant's possession, other than the night of the rape. Like the victim in the rape here, the earlier victim described her assailant as a black male of medium build whose height was similar to that of defendant.

The "acid test" for whether evidence of other distinct crimes properly falls within the identity provision in Rule 404(b) and its common law precursor "is its logical relevancy to the particular . . . purpose . . . for which it is sought to be introduced." *State v. McClain*, 240 N.C. at 177, 81 S.E.2d at 368. We hold that the circumstantial evidence that defendant was the perpetrator of the offense committed five months earlier—including both similar fingerprint evidence and the similar pattern of its perpetration—demonstrates a potent, logical pertinence to the question of the assailant's identity in the offense on trial. In particular, fingerprint and palm print evidence found at the scene of the crimes, coupled

with strong circumstantial evidence that the nights of the offenses were the only occasions upon which defendant's prints could have been made on the respective premises, was evidence of considerable probative force, far outweighing any possibility of unfair prejudicial effect. Thus, under the circumstances of the crime charged and those of the offense admitted for the purpose of proving identity under Rule 404(b), the trial court did not err in admitting evidence of the other, similar offense, which shared strong circumstantial indicia that defendant had been the perpetrator. The decision of the Court of Appeals holding otherwise is therefore

Reversed.