THORNBURG, Judge.
 

 Defendant was found guilty of first-degree kidnapping, first-degree burglary, first-degree rape and two counts of first-degree sexual offense, for acts committed upon D.T. After announcing a prayer for judgment continued on the burglary and kidnapping offenses, the trial court sentenced defendant to three consecutive terms of 384 to 470 months imprisonment.
 

 The State's evidence tended to show that D.T. was attacked by an intruder in her home in the Trinity Park area of Durham, North Carolina on 7 March 2002. D.T. testified that she fell asleep some time after 9:00 p.m., and was roused by a noise at her back door. When she opened her eyes, she saw a black male standing at the endof her couch, wearing a green hooded sweatshirt, blue jeans, brown cotton gardening gloves and all-black sneakers. A maroon bandana was covering his nose and mouth. The intruder pointed a sawed-off shotgun at D.T. and told her to be quiet or he would kill her. The intruder ordered D.T. to get up and pushed her through the house, looking for other occupants before forcing her into her bedroom.
 

 The intruder forced D.T. onto her bed and told her to lay down on her stomach. After pulling off her pajama bottoms, he unzipped and removed his pants and ordered D.T. onto her hands and knees. He asked D.T. if she had any handcream. He retrieved the bottle from the bathroom, removed one of his gloves, and applied the cream to D.T.'s anal and vaginal areas. He then ordered D.T. onto the floor and made her perform oral sex upon him. He then ordered D.T. onto her hands and knees and had vaginal and anal intercourse with her before ejaculating in her vagina.
 

 The intruder took D.T. into the bathroom and told her to straddle the toilet. He emptied a plastic spray bottle, filled it with water, and attempted to squeeze the water into her vagina. He then told D.T. to fill the bathtub, get into the tub and wash herself and his glove. When she finished, he directed her to empty the tub and wipe it down with a washcloth.
 

 The intruder returned D.T. to the bedroom, again threatening to kill her if she looked at him. He asked where her valuables were. When she said she had no valuables, he asked, "Where is the cash?" and "Where is your wallet?" He brought D.T. into the kitchen to obtain her wallet. After D.T. gave the intruder $25.00from the wallet, he forced her into the hallway and told her to lie face down on the floor. He collected the used washcloth and towel and the top blanket from the bed and told D.T. he was leaving, instructing her to count to seventy-five before getting up. The intruder then left the residence with the towels and bedding. D.T. called 911 and was subsequently examined by a sexual assault nurse examiner at Durham Regional Hospital.
 

 State Bureau of Investigation ("SBI") Forensic Serologist Suzi Barker found spermatozoa in vaginal swabs taken from D.T. and on a cutting taken from the crotch of her pajama bottoms. SBI Forensic Molecular Geneticist Christopher Parker compared the sperm's DNA with DNA samples of two suspects identified by police but found no match. He then compared the crime scene DNA with samples contained in the SBI's Combined DNA Index System and discovered a match with defendant, who lived one-half mile from D.T. Based on Parker's finding, police obtained a warrant for additional blood, saliva and hair samples from defendant.
 

 Police arrested defendant after a traffic stop on 13 September 2002. He was wearing black New Balance shoes. In his car, police found a semi-automatic handgun, cloth gardening gloves, leather work gloves, surgical gloves, four types of hats, four shirts, a bandana, and a toolbox.
 

 Using a sample of defendant's blood drawn on 13 September 2002, Parker confirmed that "the DNA profile obtained from the male fraction of the vaginal swabs and the male fraction of the cutting taken from the pajama pants is 1.30 million trillion times morelikely to be observed if it came from [defendant] than if it came from another unrelated individual in the North Carolina black population." Parker opined that the male DNA found on D.T. belonged to defendant and asserted it was "scientifically unreasonable to believe" otherwise.
 

 SBI Special Agent Joyce E. Petzka confirmed that two latent shoe prints lifted from D.T.'s kitchen floor on 7 March 2002 matched the design, pattern and size of defendant's right shoe. Petzka noted "more wear" on defendant's shoe than was revealed on the latent prints, particularly on the center ridges of the sole. She explained, however, that the wear on the shoe "could have been greater had it been worn six months additionally beyond the time that the lifts were taken."
 

 Over defendant's objection, the State adduced evidence of a home invasion and sexual assault of R.H., which occurred six months after the assault on D.T. and approximately one and one-half miles from her residence. R.H. testified that she was assaulted in her home on 5 September 2002, after being awakened some time after 3:00 a.m. by a male intruder covering her mouth with his hand and screaming for her to wake up. The intruder was wearing jeans and a sweatshirt and had a "rubber dish washing glove on one hand and then a cloth glove on the other." After telling R.H. not to scream, the intruder asked where she kept her cash. When she said she had no money, he asked for her valuables. He drew a handgun and threatened to kill her if she screamed or resisted. After removing R.H.'s clothes, he asked her if she had any lotion andrepeated that he would kill her if she did not cooperate. R.H. told the intruder that she had a bottle of lotion on her dresser. When she began to look over toward the dresser, the intruder pushed her down and told her not to look at him. He removed his pants, grabbed R.H. by the head, and forced her to perform oral sex on him. He then took off the rest of his clothes, climbed on top of R.H., put lotion on his penis and had anal intercourse with her, stopping once to put on a condom and to order R.H. onto her hands and knees. When he finished, the intruder dressed, removed the sheets from the bed, and wiped her buttocks and lower back. After taking the lower sheet from beneath R.H., he demanded to know where her money was. He brought R.H.'s bag to her and told her to retrieve her wallet. The intruder took the money from the wallet and told R.H. to count to 100 before looking up or calling the police, so that he could look for "anything else in the house that I want." R.H. heard defendant's footsteps "for a little while" before he left. She then contacted the police. On cross-examination, R.H. noted that she described the intruder to police as a black male.
 

 Police discovered that R.H.'s kitchen window had been broken into and a plastic cube had been placed underneath the window on the outside of the house. A flat-head screwdriver was found sticking out of the ground. Police also lifted a shoe print bearing the words "New Balance" from the plastic crate. SBI Agent Petzka compared the print with the shoes defendant was wearing atthe time of his arrest eight days later on 13 September 2002 and found them to be "consistent in size, design and general wear[.]"
 

 On appeal, defendant claims the trial court erred in allowing the State to introduce evidence of the assault on R.H. under N.C.R. Evid. 404(b), absent proof that he committed this assault. Noting that he had not even been charged with the assault on R.H., defendant argues that evidence of the attack on R.H. should not be admitted.
 

 Rule 404(b) provides as follows:
 

 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.
 

 N.C. Gen. Stat. § 8C-1, Rule 404(b) (2003). The rule's "list of permissible purposes for admission of 'other crimes' evidence is not exclusive, and such evidence is admissible as long as it is relevant to any fact or issue other than the defendant's propensity to commit the crime."
 
 State v. White,
 

 340 N.C. 264
 
 , 284,
 
 457 S.E.2d 841
 
 , 852-53,
 
 cert. denied,
 

 516 U.S. 994
 
 ,
 
 133 L. Ed. 2d 436
 
 (1995).
 

 "With respect to prior sexual offenses, we have been very liberal in permitting the State to present such evidence to prove any relevant fact not prohibited by Rule 404(b)[,]" particularly "where the fact sought to be proved is the defendant's intent to commit a similar sexual offense for which the defendant has been charged."
 
 State v. White,
 

 331 N.C. 604
 
 , 612,
 
 419 S.E.2d 557
 
 , 561-62 (1992) (citing
 
 State v. Boyd,
 

 321 N.C. 574
 
 ,
 
 364 S.E.2d 118
 
 (1988)). Moreover, the admission of evidence under Rule 404(b) is not contingent upon a prior adjudication or preliminary finding by the trial court that defendant, in fact, committed the similar act.
 
 State v. Stager,
 

 329 N.C. 278
 
 , 303,
 
 406 S.E.2d 876
 
 , 890 (1991) (citing
 
 Huddleston v. United States,
 

 485 U.S. 681
 
 ,
 
 99 L. Ed. 2d 771
 
 (1988)). What must be shown is "substantial evidence tending to support a reasonable finding by the jury that the defendant committed the 'similar act.'"
 
 Id.
 
 at 303,
 
 406 S.E.2d at 890
 
 .
 

 We find substantial evidence to support a reasonable finding by the jury that defendant committed the assault on R.H. on 5 September 2002. The State adduced DNA evidence which established defendant's identity as the perpetrator of the attack on D.T. on 7 March 2002. We agree with the trial court that the State further demonstrated "many, many striking similarities" between the assaults on D.T. and R.H. Both assaults involved nighttime home invasions upon sleeping victims who lived alone. Both victims described a black male assailant armed with a gun and wearing gloves, a sweatshirt and jeans. Both victims were subjected to forcible oral and anal intercourse. In both cases, the assailant asked for and used the victims' own lotion or cream as a lubricant, attempted to clean the victims following the assaults, and took the bedding on which the assaults occurred. The assailant threatened to kill both victims, told them not to look at him, asked where their money and valuables were, obtained money from their wallets, and instructed them to count to a certain number before calling forhelp. In both cases, the assailant left shoe prints of the same size, style, and type as those worn by defendant at the time of his arrest on 13 September 2002. By any reasonable measure, the evidence showed substantial "'unusual facts present in both crimes or particularly similar acts which would indicate that the same person committed both crimes.'"
 
 State v. Green,
 

 321 N.C. 594
 
 , 603,
 
 365 S.E.2d 587
 
 , 593 (quoting
 
 State v.
 
 Riddick,
 
 316 N.C. 127
 
 , 133,
 
 340 S.E.2d 422
 
 , 426 (1986)),
 
 cert. denied,
 

 488 U.S. 900
 
 ,
 
 102 L. Ed. 2d 235
 
 (1988). Finally, the two assaults occurred within a span of six months at locations just one and one-half miles apart and close to defendant's residence.
 
 See, e.g., State v. Jeter,
 

 326 N.C. 457
 
 , 461,
 
 389 S.E.2d 805
 
 , 808 (1990) (where circumstantial evidence that defendant was perpetrator, including a similar pattern of perpetration, was of logical pertinence to question of assailant's identity). In light of the compelling circumstantial evidence that D.T. and R.H. were assaulted by the same person, the presence of defendant's semen on D.T.'s person and clothing following the 7 March 2002 assault also supported a reasonable inference that he assaulted R.H. on 5 September 2002.
 

 Moreover, evidence that defendant broke into R.H.'s residence and sexually assaulted her on 5 September 2002 was admissible under Rule 404(b) to show,
 
 inter alia,
 
 his intent to commit rape when he entered D.T.'s residence on 7 March 2002, as well as his purpose in confining, restraining, or removing D.T. while inside her residence.
 
 See, e.g., State v. Hall,
 

 85 N.C. App. 447
 
 , 450,
 
 355 S.E.2d 250
 
 , 252 (1987). Inasmuch as defendant's intent and purposewere essential elements of the charged offenses of first-degree burglary and first-degree kidnapping, we find no error by the trial court.
 

 Defendant failed to set out his remaining assignments of error in his brief. Because he has neither cited any authority nor stated any reason or argument in support of those assignments of error, they are deemed abandoned. N.C. R. App. P. 28(b)(6).
 

 No error.
 

 Judges HUDSON and STEELMAN concur.
 

 Report per Rule 30(e).