STATE OF NORTH CAROLINA
v.
GREGORY DORELL SCRIVEN.
No. COA07-797
North Carolina Court of Appeals
Filed January 15, 2008
This case not for publication
Attorney General Roy Cooper, by Assistant Attorney General Jason T. Campbell, for the State.
Nora Henry Hargrove for Defendant.
STEPHENS, Judge.
On 12 January 2007, a jury found Defendant guilty of attempted first-degree murder, assault with a deadly weapon with intent to kill inflicting serious injury ("AWDWIKISI"), discharge of a weapon into occupied property, and possession of a firearm by a convicted felon. The trial court imposed four consecutive prison sentences totaling 507 to 638 months. Defendant gave notice of appeal in open court.

I. FACTS
Prosecuting witness Craig Slocum testified that he visited his girlfriend, Taryn McLaughlin ("McLaughlin"), at her residence in the Puppy Creek Mobile Home Park on 3 January 2006. At approximately 6:30 a.m., he drove his 1991 Acura Legend to a nearby Exxon station to buy eye drops and stockings for McLaughlin as she prepared for work. Returning from the store, Slocum noticed a late-model black truck following him. He parked his car in McLaughlin's driveway, looked to his left, and saw the black truck "just sitting there" in the street. Defendant was seated in the truck with a "crazy look on his face." Although Defendant had a toboggan pulled down "almost . . . over his eyes," Slocum recognized Defendant "[w]ithout a shadow of [a] doubt[.]" Defendant drew a handgun and fired "about six shots" through his open passenger-side window at Slocum's car, striking Slocum twice in the right arm and once in the back. Slocum put his car into gear and backed out of the driveway, but was unable to move his legs to press the gas pedal. He then opened his car door and "fell like a sack of potatoes" into the street.
When Hoke County Sheriff's Detective Jennifer Lewis responded to the scene, Slocum told her that Defendant had shot him. After being transported to the emergency room of Cape Fear Valley Medical Center, Slocum spoke to Red Springs Police Detective Yayha Shakir and again named Defendant as the shooter. Slocum remained hospitalized for seven to nine days. As a result of the damage to the median nerve in his right arm, Slocum continued to experience constant pain and numbness in his dominant hand and could "barely even use it" at the time of trial. A bullet also remained in his lung.
Detective Lewis testified that she received a report of "shots fired" at Dalmatian Drive in the Puppy Creek Mobile Home Park at 6:41 a.m. on 3 January 2006. When she arrived, she found Slocum in the roadway beside a blue Acura, surrounded by blood. Slocum told Lewis that he had been shot by "Gregory Scriven[,]" a black male from Fayetteville who was driving a "black dually" truck. Lewis talked to Slocum until EMS personnel arrived. During a subsequent search of the crime scene, Lewis found a projectile in McLaughlin's driveway. She found a second projectile in the front passenger-side floorboard of Slocum's car. The car had a bullet hole in the rear driver-side window and the front passenger-side window, and two bullet holes in the front passenger-side door. A bag containing eye drops and panty hose was on the passenger seat.
Detective Shakir testified that he interviewed Slocum in the emergency room of Cape Fear Valley Medical Center on 3 January 2006, and confirmed that Slocum identified Defendant by name as the person who shot him.
Southern Pines Police Officer Paul Wright testified that on 13 January 2006, ten days after the shooting at issue in this case, he responded to a report of a robbery at the Champion Car Wash on U.S. Highway 1. Advised that the suspect had fled on foot toward Pinehurst Avenue and Richards Street, Officer Wright drove onto Richards Street and saw Defendant, who matched the suspect's description, running toward Humpty Dumpty Day Care. Officer Wright parked his patrol car and chased Defendant on foot into a wooded area behind a Lowe's Home Improvement store. Defendant kept his right hand "towards his front as if he had it tucked into his front belt." As Defendant came down from an embankment behind the Lowe's parking lot, Officer Wright saw a gun in Defendant's right hand and ordered him to drop it. Defendant "threw the weapon approximately eight feet and immediately got down . . . on the ground." Officer Wright handcuffed Defendant and collected the discarded gun, a .38 Special Rossi revolver loaded with five bullets. A search of Defendant's person produced four additional rounds of .38 Special ammunition in a cigarette box, a holster clipped inside Defendant's belt, and three grams of marijuana. The gun, holster, and the cigarette box with the four loose bullets were admitted into evidence.
The prosecutor also displayed a diagram prepared by Officer Wright, which depicted the area described in his testimony. The court received the diagram into evidence for illustrative purposes. When the prosecutor began to re-examine Officer Wright about the incident with the aid of the diagram, defense counsel objected, stating, "Your Honor, he's already testified to this information. I don't see the relevance of his proceeding." The court overruled the objection.
Cumberland County Sheriff's Detective Eugene Bishop, received by the trial court as an expert in firearm and tool mark examinations, testified he was "100 percent positive" that the .38 Special Rossi revolver recovered by Officer Wright on 13 January 2006 was the gun that fired the bullets found in the driveway of 111 Dalmatian Drive and on the floorboard of Slocum's car on 3 January 2006.

II. DISCUSSION
First, Defendant argues that his convictions and consecutive sentences for attempted first-degree murder, AWDWIKISI, and discharging a weapon into occupied property violated the constitutional prohibition against double jeopardy. He contends that his firing of multiple gunshots at Slocum's car constituted a single, continuous assault that did not support multiple punishments.
The constitutional bar against double jeopardy protects a defendant from, inter alia, multiple punishments for the same offense. North Carolina v. Pearce, 395 U.S. 711, 23 L. Ed. 2d 656 (1969), overruled on other grounds, Alabama v. Smith, 490 U.S. 794, 104 L. Ed. 2d 865 (1989); N.C. Const. art. I, § 19. It does not, however, prohibit separate punishments for distinct offenses arising from the same action. State v. Tirado, 358 N.C. 551, 599 S.E.2d 515 (2004), cert. denied, sub nom. Queen v. North Carolina, 544 U.S. 909, 161 L. Ed. 2d 285 (2005). For purposes of double jeopardy analysis, "[i]f proof of an additional fact is required for each conviction which is not required for the other, even though some of the same acts must be proved in the trial of each, the offenses are not the same." State v. Murray, 310 N.C. 541, 548, 313 S.E.2d 523, 529 (1984), overruled on other grounds, State v. White, 322 N.C. 506, 369 S.E.2d 813 (1988).
We find no double jeopardy violation in Defendant's separate punishments for attempted first-degree murder, AWDWIKISI, and discharging a weapon into occupied property stemming from the same incident. Each of these offenses requires proof of a factual element that is not shared by the others, to wit: (1) premeditation and deliberation for attempted first-degree murder; (2) infliction of a serious injury for AWDWIKISI; and (3) shooting into an occupied vehicle for discharging a weapon into occupied property. See, e.g., Tirado, 358 N.C. 551, 599 S.E.2d 515 (2004) (upholding separate punishments for attempted first-degree murder and AWDWIKISI based on the same incident); State v. Morston, 336 N.C. 381, 393, 445 S.E.2d 1, 8 (1994) (upholding separate punishments for AWDWIKISI and discharging a weapon into occupied property as "separate and distinct offenses which serve distinct purposes"). Accordingly, Defendant's assignment of error is overruled.
Next, Defendant claims the trial court committed plain error in allowing Officer Wright to testify about Defendant's possession of marijuana and involvement in an armed robbery on 13 January 2006. While conceding the relevance of evidence that he possessed the gun used to shoot Slocum, Defendant contends that the State could have conveyed this information to the jury without reference to his alleged criminal acts of 13 January 2006. Defendant argues that these other "bad acts" were inadmissible under N.C. Gen. Stat. § 8C-1, Rule 404(b), serving no other purpose than "to make the jury think [he] was an awful person."
Defendant did not object at any time during Officer Wright's initial and detailed recounting of his encounter with Defendant on 13 January 2006, when Officer Wright responded to the report of a robbery. Only when the prosecutor asked Officer Wright to describe the incident a second time with the aid of a diagram did Defendant raise an objection, and he did so only on grounds that Officer Wright had "already testified to this information[.]" " Where, as here, a criminal defendant fails to object to the admission of certain evidence, plain error analysis is the applicable standard of review." State v. Ridgeway, 137 N.C. App. 144, 147, 526 S.E.2d 682, 685 (2000) (citation omitted). The term "plain error" does not simply mean obvious or apparent error, but rather is defined as follows:
[T]he plain error rule . . . is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a fundamental error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done, or where [the error] is grave error which amounts to a denial of a fundamental right of the accused, or the error has resulted in a miscarriage of justice or in the denial to appellant of a fair trial or where the error is such as to seriously affect the fairness, integrity or public reputation of judicial proceedings or where it can be fairly said the instructional mistake had a probable impact on the jury's finding that the defendant was guilty.
State v. Odom, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (quotation marks and citations omitted) . However, a prerequisite to this Court's engaging in a "plain error" analysis is the determination that the evidentiary matter complained of constitutes error at all. State v. Torain, 316 N.C. 111, 116, 340 S.E.2d 465, 468, cert. denied, 479 U.S. 836, 93 L. Ed. 2d 77 (1986). Then, "[b]efore deciding that an error by the trial court amounts to `plain error,' the appellate court must be convinced that absent the error the jury probably would have reached a different verdict." State v. Walker, 316 N.C. 33, 39, 340 S.E.2d 80, 83 (1986).
We note at the outset that, although Defendant assigns plain error and states the proper standard of review, he offers no meaningful argument that the admission of the contested portions of Officer Wright's testimony met the plain error standard. See State v. Wiley, 355 N.C. 592, 624, 565 S.E.2d 22, 44 (2002) ("[B]y simply relying on the words `plain error' as the extent of his argument in support of plain error, defendant has effectively failed to argue plain error and has thereby waived appellate review."), cert. denied, 537 U.S. 1117, 154 L. Ed. 2d 795 (2003). Defendant does not cite any case in which the erroneous admission of similar evidence was held to be plain error, see N.C. R. App. P. 28(b)(6) (2006); nor does he explain how evidence of his possession of marijuana and possible involvement in a robbery undermined the fundamental fairness of his trial or probably changed the jury's verdict. Defendant suggests only that "without the evidence that he was a robber and a druggie the jury might have cast a more skeptical eye on Slocum's identification[.]"
"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person . . . [but] may, however, be admissible for other purposes, such as proof of . . . opportunity, . . . [or] identity[.]" N.C. Gen. Stat. § 8C-1, Rule 404(b) (2005). Our courts have construed Rule 404(b) as a rule of inclusion, allowing evidence to be admitted unless "its only probative value is to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged." State v. Coffey, 326 N.C. 268, 279, 389 S.E.2d 48, 54 (1990). Moreover, where evidence within the purview of Rule 404(b) "reasonably tends to prove a material fact in issue in the crime charged, it will not be rejected merely because it incidentally proves the defendant guilty of another crime[.]" State v. Jeter, 326 N.C. 457, 458, 389 S.E.2d 805, 806 (1990) (citation omitted).
Here, evidence tending to show that, at the time of his flight from and subsequent arrest by Officer Wright on 13 January 2006, Defendant was carrying the gun that was also used to shoot Slocum was admissible under Rule 404(b) to establish Defendant's identity as Slocum's shooter. Furthermore, Officer Wright's testimony regarding the robbery was admissible to explain the reason for his response to the scene and subsequent encounter with Defendant. Cf. State v. English, 171 N.C. App. 277, 614 S.E.2d 405 (2005) (holding that a police officer's testimony about a neighborhood's reputation for drug activity was admissible for the purpose of explaining the officer's presence and activity in the neighborhood). Accordingly, we hold there was no error in the admission of Officer Wright's testimony regarding Defendant's possession of the revolver and the reported robbery on 13 January 2006, and thus, "plain error" analysis is unnecessary.
Relevant evidence is evidence having any tendency to make a fact at issue more or less likely. N.C. Gen. Stat. § 8C-1, Rule 401 (2005). Relevant evidence is generally admissible while evidence that is not relevant is not admissible. N.C. Gen. Stat.§ 8C-1, Rule 402 (2005). The testimony regarding Defendant's possession of three grams of marijuana at the time of his arrest on 13 January 2006 had no tendency to make a fact at issue in the trial of the case sub judice more or less likely. Thus, the testimony was inadmissible under Rule 402. However, such evidence was not so inflammatory or prejudicial as to undermine the fundamental fairness of Defendant's trial. Slocum's immediate and unequivocal identification of Defendant as his assailant, combined with Defendant's actual possession ten days later of the gun used in the shooting, was compelling evidence of Defendant's guilt. Defendant has failed to show that the jury probably would have reached a different result had the evidence not been admitted. Accordingly, any error committed by the trial court in allowing the evidence of Defendant's possession of marijuana did not rise to the level of "plain error." This assignment of error is overruled.
The record on appeal includes additional assignments of error not addressed by Defendant in his brief to this Court. Pursuant to N.C. R. App. P. 28(b)(6), we deem them abandoned.
NO ERROR.
Judges TYSON and GEER concur.
Report per Rule 30(e).